My name is Michael McGinn. I represent Competition Specialties, Inc. of Florida, which was the defendant below. And I'll probably refer to them repeatedly as the defendant in order to aid the Court in working through this. I intend, you know, we brought, I believe, five or six issues on appeal. I intend in these remarks to focus on the dismissals of the lashes defense on summary judgment, the inconsistency of the verdict, and the overly broad injunction ordered in this case. I will touch on the other topics, and I'd be certainly willing to speak to any topic that you, if you prefer me to address them in any order. Lashes is knowingly allowing an infringing mark to be used without objection for a lengthy period of time. In this case, the trial record below demonstrates that the plaintiff knew of the defendant in 1991, nine years before it brought its action for trademark infringement. During this time, defendant built its business, a decidedly niche business, of selling specialty parts for sportsman drag racers, almost exclusively relying on the mark CSI to describe its products. It chose the name CSI because that was the name of the one of the companies of the two founders of the defendant, both of whom are in this courtroom in the front row here, Mr. Beckenbaugh and Mr. Wood. What did CSI stand for? Excuse me? What did CSI stand for? I don't know that it stood for anything before they adopted it. Two years later, they decided that they wanted to come up with something that it would stand for, and they chose the phrase competition specialties because it, like many businesses, they chose a name that actually described their product, which is specialty parts for competition automobiles. You've got network television with two CSI shows now. Isn't that interesting, Your Honor? Yes. The other is Florida. Maybe they'll sue each other. Perhaps. It's the same show. Perhaps. And, you know, I think the other reason they chose CSI, it's an important point. It's got to be short enough to fit on one of those bumper stickers that go on drag cars. It's actually a very, very important part of the business plan if you're going to sell to sportsman drag racers. Is that why Senator Graham withdrew his name was too long for the race cars? That may well be true, Your Honor. Yet despite the long delay and the significant reliance by the defendant on the use of its mark during that period of time, the Court dismissed laches on summary judgment. Isn't laches somewhat discretionary doctrine where, you know, the total circumstances, a whole lot of facts are considered? So what's the standard for our review of the Court's decision to knock out your laches defense? Well, I think you put the finger on it, Your Honor, which is it is an intensely factual analysis and the denial of that defense on summary judgment before the factual record was fully developed. I believe that you are entitled to review the summary judgment de novo and ask that this go back for a consideration of the record on this. I'd point out two more things here, Your Honor, on this. First is that the Court below relied on the doctrine of progressive encroachment to say that laches would not apply, and by that, that the growth was slow and steady, so therefore laches should not apply. And that was a misapplication of a legal standard in this case. I think the public policy principles behind laches are clear. A plaintiff is not allowed to sit on their hands while somebody else is building their business. But at the same time, a plaintiff is given some latitude in deciding when to act. I think the progressive encroachment doctrine is understood as giving the plaintiff some latitude in figuring out when it must act. But the factual question underlying that and what the Court's – what the Court has held in a number of cases is that the plaintiff is bound to act and the likelihood of confusion has arisen to such a level that the plaintiff is duty-bound to act. And now that's a factual inquiry that was short-serted by the denial of the laches defense on summary judgment. Interestingly enough, the Court in a footnote on summary judgment tried to bolster its position by saying that we don't have to apply the six-factor factual test, but we will say that we'll take a quick look at it and say that there was harm to plaintiff, the plaintiff did not know about the defendant, and that there was competition between the parties, which would lead to the application of laches. In other words, it was reaching factual conclusions. And in fact, at trial, it turned out to be false. The trial, the jury found that there was no damages to plaintiff. They found also that the plaintiff did know – well, they didn't find this, but that was the evidence, excuse me, at trial – that they did know about the defendant from 1991, yet took no action. So I think this is a factual inquiry that the Court below should have allowed to continue. This is a factual inquiry. What do you mean by this? Whether or not laches applied. Whether or not laches applied. And whether or not the likelihood of confusion was such that the plaintiff was duty-bound to act long before it did. And how did the district court deal with the likelihood of confusion issue? On summary judgment, it found that it could not rule on likelihood of confusion because it was a factual issue and reserved the issue for trial. So it concluded that there was a progressive encroachment and concluded that having found that set of circumstances, which at least some of our cases have suggested obviate the need to move on to the likelihood of confusion, that if it's progressive encroachment, that as a matter of law basically knocks out the likelihood. And I believe that that was a misapplication of the legal standard. And I would, as a thought exercise, imagine if a defendant's growth in product was steady and continuous, slow and steady for 20, 30 years. Clearly, we wouldn't say that that would always obviate the need. I think, again, that the point of the problem. Kennedy. Not always, but in this case. I mean, 5 years you had notice, the company had notice. There was, what, a 5-year interval? Is that what you're saying? In 1991, the plaintiff said they first knew of the defendant and believed that there was confusion in the marketplace, therefore putting it on notice to act. In 1993, it spoke to its lawyers about pursuing it. In 1995, it sent a cease and desist letter. It was 2 years, really, isn't it? Well, it sent a cease and desist letter. Our client stopped using competition specialties, one of the marks it issues, applied for a trademark for CSI, found that CSI was held by yet another company named Chalmers Suspension International, concluded that it was under – it was not infringing because the mark was held by another company, called them up, asked for verbally permission to use it, and continued. So it – I think its actions were reasonable, and then the lawsuit was not brought until the year 2000. I think it's very important to look at what the plaintiff was doing during this same period of time. The plaintiff sent the cease and desist letter in 1995. It also applied for CSI. It was also turned down by the Patent and Trademark Office, the PTO, because of the existence of Chalmers Suspension International and CSI. In order to obtain a registration for the CSI, it told the Patent and Trademark Office, we will only use these mark on services, wholesale auto distribution services, and was granted the mark. It then immediately turned around, sued us, after it received the mark in 1999, after a four-year period, for the use of the – for the defendant's use on goods. And, in fact, at the time it told the Patent and Trademark Office it was using CSI only, it would only use it on services, it had been using it on goods and intended to use it on goods. Now, I'm segueing into another topic here, Your Honor, which I think that this goes to the overly broad injunction. I think this is an equitable issue that speaks to whether the Court should have granted an injunction, given this inequitable conduct by the plaintiff in not being forthcoming with the Patent and Trademark Office in receiving its patent. But it also speaks that during this nine-year period, while it was waiting to bring suit, it was engaging in aggressive lawyering in front of the Patent and Trademark Office in an attempt to bolster its attempt at trial, during the whole time our plaintiff was proceeding in a belief that – in a good-faith belief that the mark was owned by Chalmers Suspension International and that there was no infringement whatsoever with the plaintiff. Well, I guess I'm not clear on that. You're saying that because they aggressively pursued establishing their right to use CSI, that that somehow was inequitable? What is inequitable is obtaining the trademark by stating something to the Patent and Trademark Office that was false. We will own – It's all in the district court. The district court had already ruled on the validity of the mark on trademark infringement and – of the CSI mark, and we were not permitted to raise this evidence as a defense to the validity of the mark. And I believe that the Court improperly disregarded it in deciding the scope of the injunction. The next topic I want to address, Your Honor, is the inconsistency of the verdict below. And this is critical because the verdict in this matter, the trial court held bound by a finding of trademark infringement to order an injunction. And the jury also found unequivocally that there was no unfair competition in this matter. Can I just refer – Yes. Before you slide off, can you just explain then – you're not arguing, or are you? You had an argument somewhere about unclaimed hands, but you're saying is this deception you allege with respect to the PTO in a relationship to the injunction? Could you explain what – if we agreed with you that there was deceptive activity vis-a-vis the PTO, how does that play into the scope of the injunction? What would you have us do? Or the district court should approve the mandate. Well, I believe that there are a number of factors about the scope of the injunction, Your Honor. I believe that – Well, how does that issue play into it? And I will address it. I think it is one of the factors that plays into whether an injunction is appropriate given a – yes. Okay. At all. Right. That's right. We're talking here about a permanent injunction after trial, right? Yes, we are talking about a permanent injunction after trial. There was no preliminary injunction. Under your appeal, you're – first, you're claiming that your latches defense was knocked out improperly on a summary judgment or a motion to eliminate. On a summary judgment and then affirmed. You didn't get to submit that to the jury, right? We did not. There was no jury instruction on latches. They were not given an opportunity. What didn't consider it post-trial. Right. Would that issue, in your theory of the case, assuming that the district court should not have granted a summary judgment on latches, would that issue be an issue for a jury on a jury instruction or an issue for the court after all the evidence was submitted? I think it certainly – we could have certainly asked the jury for advice on that like we asked the jury for advice on intent. And the judge certainly should have considered it. In fact, I think that these facts amount to it as a matter of law. I must admit, I am not sure, Your Honor, whether the jury could have ruled on that in their – in their power. Is the manner in which the district court dealt with latches harmless error in this case? I mean, didn't the jury find there was a likelihood of confusion? Didn't the jury find there was an intentional infringement? Under Ninth Circuit law, isn't latches not available to a person who intentionally infringes? Well, this comes back then to my inconsistency of the verdict, Your Honor. The jury also found that there was no unfair competition. And the court, in fashioning an injunction, is necessarily bound by what the jury must have decided on these matters. But we don't know today what the jury found. If you look at the elements of unfair competition and the elements of trademark infringement as read to the jury and as they exist in the law, they match up virtually identically. It's the use of the mark on goods or services, a likelihood of confusion as a source of origin, and damages. And the jury below found that there was no unfair competition. It also found that there was trademark infringement. And there's no way to reconcile those two. And the trial – and the error of the trial court below was in believing it was bound by the trademark infringement finding, yet not bound in any way by the unfair competition finding. And which – How did the court explain its position? The court attempted to reconcile it in its decision by saying that the jury must have meant to apply unfair competition to the period of time before the trademarks were issued, and then must have applied trademark infringement to the period of time after the trademarks were issued. What's the matter with that? That's not what the instructions say. The instructions say in both trademark and unfair competition whether the use of the mark on goods or services was or is likely to cause confusion as to the use of goods or services. There's nothing in the instructions that said this only applies to this time period and this only applies to that time period. The instructions on their face say that they are two – two claims that are coexisting in time. So when I look at this finding of no unfair competition, I think you add to that a no damages for the – for the plaintiff, no violation of the Washington Consumer Protection Act, because a trademark infringement is not per se a violation of the Washington Consumer Protection Act. You also have to add in some public interest level. So in essence, the jury found that no public interest was implicated by this. You know, no evidence at trial of any actual damages. You know, what was the jury – what was the court bound by? Was it bound by the trademark infringement, which says there was a likelihood of confusion, or was it bound by the unfair competition, which said there was none? Is it possible to, for injunctive purposes, to consider that there was the prospect if there were expansion of likelihood of confusion, but that it had not matured to the level of unfair competition? Can it be reconciled that way? That is not – that is simply not what – I don't believe so, Your Honor. I don't believe that that's what the – what the case law says the causes of action are, or what the instructions say the causes of action are either. The trademark infringement is, you know, a statutory statement of unfair competition. So there had to be, in your view, there had to be present an actual likelihood of confusion for the trademark infringement, for them to find – for the jury to find the likelihood of confusion. Likelihood of confusion. Okay. And for unfair competition, therefore, if the jury were consistent, they would have found unfair competition as well. Right. And I – If all the elements are otherwise the same? The elements are the same. Now, of course, the trademark infringement instruction has detailed instructions about the seven factors, the slewcraft factors for trademark infringement, but those are all just an attempt to understand the one factor, likelihood of confusion. Was there any post-verdict motion by your client for, like, you know, a new trial because of an inconsistent verdict? We didn't ask for a new – Is that relevant to the issues before us? I don't believe it's relevant to the issues before us. Our position here is that the court – the jury completed its work when it found there were no damages. It completed the legal work in the case.  We didn't need a new trial on damages. Certainly not. And the trial court has the equitable power. And you could try a trademark infringement case under, you know, to the court as it was. I think the relief we would like is a remand for a hearing, you know, and I'm sure the parties could work out an appropriate hearing for the submission of any additional evidence relevant to latches, and the court could reach its conclusion at that point. But you're saying that at the injunction level now, because you're not attacking the jury, inconsistent jury verdicts, you're attacking essentially the district court's use of that in fashioning the injunction, correct? I think that's correct. Not really in fashioning injunction, but – What you're saying, then, is that somehow, because the jury came up with the finding of trademark infringement, not unfair competition, the district court was bound to the exoneration side as opposed to the conviction side. That's correct. I'm not saying that the trial court was bound to conclude that it had to exonerate us. That's correct. And say no injunction, based on the inconsistency. I will say, just as quickly as I can – Unique. It's a fairly unique procedural issue, then. It is a unique procedural issue. And I will say we searched long and hard to try to figure this out. And I think that is a very interesting part of this case. I understand why, if there's a finding of no damages, you wouldn't want to have the whole thing start all over again. But – I mean, we could have a jury trial again and – I'm sorry, I interrupted you, Your Honor. The standard for whether an injunction can issue, though, isn't there some leeway to the district court so that – it seems to me it's difficult for us to say the district court had to disregard part of the jury's verdict and pay attention to another part of the jury's verdict in fashioning or in declining injunctive relief when there's not a challenge to the inconsistency on a motion to – for a new trial. I think, Your Honor, that we are not asking the trial court below to consider only one part of the verdict or the other. We are asking the trial court judge below to consider in its equitable powers what happened. It heard all the evidence, except for the laches evidence, because that was – there was a motion in limine. But it heard the evidence. It could try it. We're not asking the court to decide on one piece or the other or disregard one piece or the other. If we – could we then – If the trial – if the district court then looks at it, as apparently you're saying – With a fresh eye. With a fresh eye and decides not just based on the trademark verdict. Right. But on the – It says I can reconcile these or I think – in other words, have to – I think it's – Something forward or what? Make an independent judgment? I think it needs to make an – I'm sorry, Your Honor. Make an independent judgment as to whether there was likelihood of conviction. I think it needs to make an independent judgment as to whether there was likelihood of conviction. Additional hearing. Have an additional hearing and make that finding based on the trial record that it already heard. Did you want to save that for rebuttal? I'll save that for rebuttal. And I will – I'll save it. I've got one minute. I will save it for rebuttal. Thank you. Thank you, Your Honors. Bob Ward for the Plaintiff Appellee Cross Appellant, CSI, Washington – of Auburn, Washington. Tim Buller is with me on the brief. The defendant in this case misunderstands the public policy considerations behind the doctrine of progressive infringement. Indeed, it is assumed for purposes of the doctrine that there is infringement somewhere. So the emphasis there in this equitable consideration, as a part of the equitable consideration of which is laches, is simply not an emphasis on whether there is infringement or there is not. Of course, there – that is assumed. But how much the infringement is and how it grows. Indeed, if it were otherwise, the courts would be flooded with nothing but trademark litigation, because there would be an obligation to file suit under the defendant's interpretation immediately upon infringement anywhere in this country, and regardless of its size and regardless of its commercial importance. So clearly, that is – that is not the law on progressive infringement. The court was correct in so finding. Indeed, the evidence was incontestable. It was from the defendant's own mouth. They admitted in their answers to interrogatories that their encroachment had been slow and steady. So the court was absolutely correct in finding that. And having found no – having found progressive infringement, there is no cognizable delay. Okay. Let me ask. Yes, sir. I have a question for you, Mr. Ward. And also, I think you may get the prize for the advocate who came the furthest for today's argument. So welcome to Seattle. That's correct. Thank you. It's good to be back. We have a Connecticut counsel, too. All right. I may have to retract that. But here's my question. Let's assume that contrary to your position, we were to decide that it was a mistake for the court to take out the latches defense. What would be the remedy in a case where there was a trial and a jury verdict and a finding of no damages? I mean, could there be, as your colleague urges us, kind of a remand for a hearing solely on latches? Or would it be necessary to say the whole trial has got to be held again and damages are – it's open for whatever no jury would do? Well, no, sir. Your Honor, as the court has intimated previously, willful infringement vitiates latches. So latches is dead in any event. And all this other discussion is, I think, secondary to that. Has the jury found explicitly there was willful infringement? They indeed did. Counsel mischaracterized that, I believe, as an advisory verdict. Under the Constitution of the United States, that is not an advisory verdict. The trial court used the word advisory as an English language word in saying that what he did with that was within his discretion. I guess advisory being a shorthand for discretion, I would contend that, of course, discretion is not unbounded or unfettered. But that verdict is not discretion. That's binding under the Constitution. So latches, in my view, is under the law a dead issue here. Over the past 85 years, various courts have held that latches does not bar a suit against a deliberate infringer. Danjak. I think that's a correct statement of the law, Your Honor. Indeed, it's a species of a thousand years of Anglo-American jurisprudence that he who comes to court must come with clean hands, and that's a species of that doctrine. How does that work, though? I mean, if, in fact, if latches is being an equitable defense, if there were a valid latches defense in the case ought not to proceed, would that not be appropriate for the district court to resolve before it submits the issue of infringement? Or are you saying, no, it's inevitably has to come after the fact? No, it doesn't matter when it comes, because it seems to me that counsel's argument is also erroneous that a condition preceding to latches is a determination on likelihood of confusion. And you don't have to prove your cause of action in order to litigate the issue of latches. The question is whether there's a cognizable cause of action and not who is to prevail on it. Also on the issue of latches, clearly this is a matter for the bench and not a matter for the jury. I think there was a question about jury instructions possible. So latches should not happen. It would be a question for the court, not for the jury. That's right. Well, it's, again, being a matter of equity, a matter of the conscience of the King's chancellor, sitting in equity. Traditionally, latches has always been an equitable defense to be heard by the court. But you said, for example, on progressive encroachment, it assumes infringement. So I'm just trying to understand the logical structure. It assumes for purposes of the motion, yes. In other words, infringement, you know, is more or less irrelevant because some infringement is okay. Okay. I get the point. I'm trying to pursue it, though, in the construct of how latches – let's suppose you had a screamingly obvious case for latches, but the court defers ruling on it until the jury comes in and says, yes, there was infringement, it was intentional. Too bad. Your latches case goes out. Is that it? Well, if that were our facts in our situation, you know – I'm not saying it is here. I'm talking about a matter of law. I might have a different view of it. But the point is here that the court looked at the record before it on latches and decided that there were no latches in any event because of, again, public policy considerations. The trademark law is affected uniquely with the public interest. The public, not just the parochial parties, the public is to be protected. And where there are identical marks and virtually identical uses in goods, the court decided in any event that latches should not apply. Counsel referred to an inconsistent verdict. There is no inconsistency here. The jury instructions are seven pages of trademark instructions, one page of unfair competition instructions, different instructions, different law, different body of law. Unfair competition is Washington State. Trademark law is Federal law. The court correctly decided in our view that, well, first of all, the legal standard is that if there's any way to reconcile a jury verdict that is said to be or accused of being inconsistent, that it should be done. In this particular instance, one way of looking at it is that the trademark infringement emphasizes registrations, registered trademark. Unfair competition many times deals with situations where there is no registration. The court said then it could be the time period. Yes, based upon registration versus no registration. I'm not even sure. We really have to grapple with the general rule about reconciling it in the sense that we don't have a motion that was denied and appealed on setting aside an inconsistent jury verdict and give us a new trial, I suppose because there were no damages determined, so. Yes, Your Honor. So the only relevance, as I understand it, is the point that Judge Fisher made earlier that it's being urged as a consideration in the scope of the injunction. Am I right? Is that the right framework for it? I don't think so because I don't see any inconsistency. Indeed. That's the right framework for it if there is one in connection with the injunction. If the Court found no inconsistency and then entered an injunction that the Court thought appropriate, we don't think it's appropriate for two and a half years to be accorded for a phase-out period on a mark that's been held to be the subject of willful infringement. That, in our view, is not discretionary. You're challenging the injunction on the other side. I mean, right? I mean, you say it should be broader or stricter or faster, and the other side says it should be slower or weaker or not at all. Well, given the public policy considerations of the trademark law, if there are inconsistent verdicts, the Court should not pretend that they're not inconsistent. Here the Court found that verdicts were not inconsistent. Indeed, if the defendants had thought so, the jury was there. The judge sent the jury out to have lunch. The jury hadn't finished its job at all. The jury was subject to recall and taking care of any inconsistency, but the defendant never raised the matter. Now, of course, they raised the matter through the back door in talking about an injunction, but the Court denied that, and presumably the Court is to be taken at its word. When the Court entered an injunction, it did not do it on the basis that there was some inconsistent verdict. The Court was correct. What exactly does the injunction require CSI Florida to do? Well, CSI Florida stated, represented at trial that they, in 1995, they had ceased use of competition specialties, the trademark, entirely, eight years before. So they were required immediately to cease and desist from any trying to reclaim that mark, if you will, after eight years of abandonment and use it again. So that was the first thing. The second thing was that they were ordered in August, by August of this year, to phase out all use of the mark CSI, and until that time, to use a disclaimer with it. Now, that was, again, we would contend that was an abuse of discretion for the Court to require a disclaimer rather than a cessation of use, because the burden of proof is on the defendant in that circumstance to show that a disclaimer would be sufficient to ameliorate the likelihood of confusion necessarily found by the jury in the willful infringement. Part of your cross-appeal? Yes, sir. That's correct. And that's a pretty high hurdle you have to get over, though, abuse of discretion in cases like this, ordinarily the Court is given wide latitude. Your Honor, I would not importunate a busy and hardworking trial judge with anything other than something that's absolutely necessary. Two and a half years of using a mark, CSI, albeit with a disclaimer, our view is that that is unprecedented. We were unable to find any situation allowing that. Mr. Ward, how does that fit with what you said earlier that they had said they had stopped using the mark? That's competition specialties, different marks. Okay, I see. Not CSI. Now, the CSI mark... Do you guys both want to use CSI, or you don't want them using it even with a phase-out? Well... For three years. The phase-out is coming up in August of this year, two and a half years of phase-out, and they have to stop using it entirely, even with the disclaimer at that point. As of August? Yes. So would that render moot? I mean, I assume we can get a ruling out before... August of which year? August of this year. 2004? I'm sorry, August of next year. August 2004. Well, I assume we can get a ruling out before that. What else would you like to say about the cross-appeal? Your time is running out. Well, again, I'm hesitant to... Don't hesitate. ...criticize the judge too much, but... You don't have to use the whole time. If you don't have anything to add... All right, hold on. Let me just say this, that for the reasons set forth, a lawyer trying a case where somebody has the burden of proof on things like deductions, here we saw it not damages, but infringers' profits. And our only burden is to show the gross receipts. Then the burden of proof shifts. And at the trial, we were not permitted to cross-examine on the legitimacy of the claim deductions or how those figures came about. That's why we asked for a detailed jury instruction on the point, instructing the jury as to the kinds of things that should not be permitted as a legitimate deduction. So what the jury was left with was a vacuum in deciding the issue of infringers' profits. And I would contend that's why we didn't get any infringers' profits. Your view is they understated profits on their books by overstating deductions of some kind. Is that what you mean? No, sir. I believe that their tax returns, I think, were correctly done for purposes of the Federal Income Tax Law. However, for purposes of trademark law, certain things should not be considered as a legitimate deduction, such as paying yourself, such as activities that aggravated the infringement. And there was no instruction on that, and counsel was not permitted to cross-examine with leeway on that very salient issue. Why not? I don't know. Was there any articulation of reason why cross-examination was denied? I believe the judge's reasoning was that it's all in the document, and the document is in evidence, and let the jury decide, and you can argue. However, that's no substitute I would maintain for direction and for a fair shot at it. And my point is that the reason there's a discretionary violation here, in my opinion, is that in the plaintiff's position here is that we didn't get a fair shot at the infringer's profits. Do you have anything else? Well, was there a ñ I mean, as I know, or as I understand it on that issue, you asked some questions on cross-examination. The judge cuts it off at some point because the judge thinks, rightly or wrongly, that the witness really isn't knowledgeable about the tax return. Well, I wasn't asking about tax returns. I was asking about the deductions for trademark purposes of, you know, did you pay yourself? Did this activity aggravate the trademark infringement? The judge made a mistake in a sense that we would have ruled something differently if we were on the trial bench. This is an abuse of discretion. It's an abuse of discretion when the ñ What's the relevance for us here? I mean, what is the relief that you would want on your cross-appeal for that? New trial on the issue of ñ New trial solely on damages. Well, solely on infringer's profits. We're not seeking damages. Damages would be ñ I see. All right. Harm to us. We're seeking them to disgorge what they got from this. So it's kind of a different situation from your usual lawsuit because infringer's profits are what we're seeking here. Do you have anything else you'd like to tell us at this point? Not at this time. Thank you very much. Thank you. We'll hear from the other side. You can respond both to this and to the cross-appeal. Your Honor, the injunction, in fact, in this case, was overly broad considering the facts that were developed at trial. An injunction should only extend as far as the harm identified by the evidence. In this case, the evidence is that the plaintiff is a wholesale dealer. It only sells to auto parts shops who they admit are sophisticated buyers. They admitted that they do not advertise or target end users in the marketplace for their products. Their concern is that they, in fact, tell their dealers, and this was their testimony, they tell their dealers they will not compete with them with end users. The reason that there was the only evidence in the record of confusion, and it was hearsay evidence with a limited instruction that it wasn't for the truth of the matter asserted, was that dealers were upset when they discovered a competition specialty selling directly to end users. That problem is ameliorated by us changing our company name from Competition Specialties, Inc., to CSI Performance Products, and the disclaimer that we have adopted saying that we are not associated with Competition Specialties, Inc. of Washington, that the only damage identified through hearsay only was that. There's no knowledge that there were any other. Kennedy. Is that the nature of the injunction in the phase-out period? Verrilli, That is the nature of the injunction in the phase-out period. Kennedy. Just make that, you want to, in other words, keep the same regimen that you've been operating under for the last period? Verrilli, We can live with that, Your Honor. And that is sufficient to do the harm. Remember, there's no evidence that there's a single diverted sale out there. There was no public interest implicated in the Consumer Protection Act. There were no damages. In fact, there was no one for a competition. Kennedy. No actual confusion? Verrilli, No actual confusion on the record. Just hearsay evidence of dealers. We didn't even have the opportunity to cross-examine the dealers to find out what their concerns were or whether there was any damage. And again, our clients, the value in this mark now really resides with our client. They have built value in the specialty niche product line with their name attached to it. That's why they don't want to lose it. But there's no evidence that anybody, any of these motorheads, and I use the term  Kennedy. Motorheads? Verrilli, Motorheads. I use the term affectionately because that, those are the people that buy parts for performance drag racers. Kennedy. I like that. You can call somebody an idiot, but you use the term affectionately. It's the truth, Your Honor. Verrilli, I would like, I would like to commend the advocates and their clients for their patience in working through these legal issues instead of just going out and watching some drag racing. It would be more con. Well, my clients do live there virtually, Your Honor. So they have seen some. Thank you. Thank you, Counsel. I'd like to add just one second. You have a couple seconds. Go ahead. These markets are related marketplaces. Customers don't slice it that closely as to where they see a mark and all of a sudden forget it when they see it somewhere else. Indeed, the record was clear that there were overlapping dealers. So the very same channels of commerce were present in some instances. And then there's the Internet usage where they're still using CSI on the Internet. So I disagree with Counsel's point that somehow the channels of commerce are all different and that somehow the injunction should be limited on that basis. Thank you both for a case well briefed and well argued. The case is order submitted. We'll take a ten-minute break before calling the next case on the calendar. All rise.
judges: Trott, Fisher, Gould